**NOT FOR PUBLICATION**                         **CASE CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JENNIFER STASUL,

      Plaintiff,                              Civil Action No. 06-5781(SDW)

      v.

STATE OF NEW JERSEY,              **OPINION**
ET AL.,

      Defendants.                       March 30, 2009

**WIGENTON, District Judge**

      This matter comes before the Court on a Federal Rule of Civil Procedure 56 Motion for Summary Judgment filed by Defendants the State of New Jersey and New Jersey Department of Transportation. The central issue is whether, under the New Jersey Tort Claims Act, Defendants are immune from liability in this wrongful death action.

      The Motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. Because the New Jersey Tort Claims Act confers absolute immunity from liability on Defendants in this action, the Motion is granted.

## I. JURISDICTION AND VENUE

      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. § 1391.

## II. FACTUAL BACKGROUND

      The following facts are set forth in the Complaint and the undisputed portions of the Local Civil Rule 56.1 Statements of Material Facts and Responses to Statements of Material Facts. For purposes of a summary judgment motion, "[u]nder L. Civ. R. 56.1, facts

submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted." *Hill v. Algor*, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000).

On December 2, 2004 at approximately 10:30 P.M., Carlos Vladimir Rodriguez ("Decedent") was operating a 1997 Mack Tractor truck. (Pl. Stmt. ¶ 11.)[1] Decedent was traveling over the upper level of the George Washington Bridge and continuing into New Jersey westbound on Interstate 95 up to the Interstate 95/Upper Route 4 Westbound split. (*Id.*) Decedent drove his truck up the ramp onto Upper Route 4 West whereupon the truck began to rollover onto its left side, contacted the guide rail and a light post, and eventually rolled over completely coming to rest on the cement bridge abutment over local Interstate 95 near milepost 10.6 on Route 4 Westbound. (*Id.*) Decedent's head struck a base from a light pole that had been damaged in a prior accident, causing serious injuries and eventually killing Decedent. (*Id.* ¶ 12.)

Jennifer Stasul ("Plaintiff"), the mother of Decedent's sole heir, was appointed Administratrix of Decedent's estate by an order of a New York County Surrogate Court. (Compl. ¶¶ 2-4.) Plaintiff, as Administratrix of Decedent's estate and natural guardian of Decedent's heir, brought this wrongful death action against the State of New Jersey (the "State") and the New Jersey Department of Transportation (the "NJDOT") (collectively referred to as "Defendants").[2] Plaintiff alleges that Defendants created a dangerous condition on the roadway where Decedent's accident occurred and, having had notice of the condition, Defendants "negligent[ly], careless[ly], and reckless[ly]" failed to remedy the condition. (*Id.* ¶¶ 6, 7, 17.)

Between April 6, 2000 and December 2, 2004, the date of Decedent's accident, ten other vehicular accidents occurred on the same Route 4 Westbound ramp. (Pl. Stmt. ¶¶ 18-27.) For

---

[1] "Pl. Stmt." refers to Plaintiff's L. Civ. R. 56.1 Statement of Material Facts.

[2] Defendant Mack Trucks, Inc. was dismissed with prejudice by December 19, 2008 Order, thus claims against it need not be addressed.

each accident, including Decedent's accident, officers from the Fort Lee Police Department completed an accident report. (*Id.* ¶ 16.) The police officers, who completed the report, were required to indicate in the report what he or she believed the "posted speed limit" was for the location of the accident. (*See Id.* ¶¶ 18-27.) The officers then sent the report to the NJDOT. (*Id.*) The "posted speed limits" indicated by the officers on said accident reports vary between twenty-five, thirty-five, forty-five, fifty and fifty-five miles per hour. (*Id.*)

Plaintiff retained a traffic engineer expert who stated that "there was no posted speed limit on Route 4 westbound, [and] there was no curve warning sign with an advisory speed plate for Route 4 West ramp . . . ." (Def. Stmt. ¶ 5.)[3] The expert also opined that the appropriate speed limit for the Route 4 Westbound ramp is forty miles per hour, not fifty miles per hour. (Pl. Stmt. Litwornia Decl. at 10.)

A manager for the NJDOT's Bureau of Traffic Engineering and Investigations, which is responsible for the traffic control devices on the highways in New Jersey, testified that if the speed limit is not indicated by a sign on New Jersey highways, N.J.STAT.ANN § 39:4-98 sets the speed limit at fifty miles per hour. (Pl. Stmt. Ex. 9 at 25-26.) The manager also testified that the default speed limit of fifty miles per hour applied to the location of Decedent's accident and "as such does not need to be signed." (*Id.* at 26) The manager further testified that New Jersey, by statute, has adopted the Federal Highway Administration's Manual for Uniform Traffic Control Devices (Pl. Stmt. ¶ 30), which provides instructions on "where [the NJDOT] should place a curve warning sign" and "where [the NJDOT] should place a speed warning sign." (*Id.* Ex. 9 at 126.)

A police officer who had investigated "numerous accidents involving both the upper and lower Route 4 roadways," (Pl. Stmt. ¶ 28), testified that "Route 4 off of the lower or upper level"

---

[3] "Def. Stmt." refers to Defendants' L. Civ. R. 56.1 Statement of Material Facts.

is "not meant for cars, trucks to be doing 50 miles per hour around this curve." (*Id.* Ex. 24 at 13.)

A senior engineer for the NJDOT testified that a "maintenance resurfacing project" occurred on Route 4 in 1999 to replace two inches of asphalt, guardrails, grates and striping. (*Id.* ¶ 32.) This engineer further testified that the effect of the resurfacing project was to "[m]ake the road smoother" and that this would, in turn, "probably" allow "the vehicle to go faster." (*Id.* Ex. 25 at 63.)

Defendants now move for summary judgment arguing that the New Jersey Tort Claims Act (the "Act") immunizes them from liability for Decedent's death.

## III. DISCUSSION

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some

4

metaphysical doubt about the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986). Once the moving party meets its initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The need of the non-movant to conduct further discovery does not preclude summary judgment unless the non-movant demonstrates how the additional discovery would preclude summary judgment. *Dowling v. City of Philadelphia*, 855 F.2d 136, 139-40 (3d Cir. 1988).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crafting Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Anderson*, 477 U.S. at 255).

Accepting all facts in the light most favorable to Plaintiff, no genuine issue of material fact exists in this action, and summary judgment is appropriate.

### B. Choice of Law

"It is well established that a federal court exercising diversity jurisdiction must apply the substantive law of the appropriate state. In the absence of a definitive ruling by a state's highest court, we must predict how that court would rule if faced with the issue." *Covington v. Continental General Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004) (citing *Packard v. Provident*

*Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993)). This Court will apply New Jersey state law in this action.

### C. New Jersey Tort Claims Act

Plaintiff asserts that Defendants are liable for Decedent's death because: (1) Defendants failed to post speed limit signage and curve warning signage; (2) Defendants set the speed limit of Route 4 Westbound at fifty miles per hour rather than forty miles per hour; and (3) Defendants generally failed to do more to maintain the roadway. (*See generally* Pl. Mem. Opp. Summ. J.)

The Act provides tort liability immunity to public entities "within the limitations of this act." N.J. STAT. ANN. § 59:1-2; *see also Smith v. Fireworks by Girone*, 180 N.J. 199, 207 (2004) (stating that the "dominant theme of the [Act] was to reestablish the immunity of all governmental bodies in New Jersey, subject only to the [Act's] specific liability provisions") (citing *Garrison v. Twp. of Middletown,* 154 N.J. 282, 286 (1998)). The "guiding principle of the Act is that 'immunity from tort liability is the general rule and liability is the exception.'" *Coyne v. New Jersey*, 182 N.J. 481, 488 (2005) (citing *Garrison*, 154 N.J. at 286).

When analyzing claims under the Act, a court must first determine whether a specific provision affords immunity to the pubic entity for the tortious act or omission. *Pico v. New Jersey,* 116 N.J. 55, 59 (1989). The Supreme Court of New Jersey has held that there is a "statutory mandate that 'any immunity provisions in the act or by common law will prevail over the liability sections.'" *Id.* at 63 (quoting N.J. STAT. ANN. § 59:2-1); *see also Weiss v. New Jersey Transit*, 128 N.J. 376, 380 (1992) ("[T]he liability provisions of the Act will not take precedence over specifically granted immunities."); *Smith v. New Jersey*, 247 N.J. Super. 62, 66 (Super. Ct. App. Div. 1991) ("Immunity under the Act predominates over liability.") Only if no specific provision affords immunity does the court apply the five-part test of N.J. STAT. ANN. §

6

59:4-2 to determine whether the public entity is liable for the tortious act or omission. *Id* at 65. The five-part test of N.J. STAT. ANN. § 59:4-2 is:

> (1) that a dangerous condition existed on the public entity's property; (2) that "the injury was proximately caused by the dangerous condition;" (3) "that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred;" (4) the dangerous condition was created by a "negligent or wrongful act or omission of an employee of the public entity within the scope of his employment;" and (5) the conduct of the public entity, in attempting to protected against the condition or in failing to do so, was "palpably unreasonable."

*Ryan v. Princeton Borough*, No. A-0409-03T2, 2005 WL 1875263, at *2 (N.J. Super. Ct. App. Div. July 11, 2005) (citing N.J. STAT. ANN. § 59:4-2).

### i. New Jersey Statute § 59:4-5

Under New Jersey law, a public entity is "not liable for an injury resulting from the exercise of judgment or discretion vested in the entity." N.J. STAT. ANN. § 59:2-3(a). Under New Jersey law, a public entity is also not liable "for an injury caused by the failure to provide ordinary traffic signals, signs, markings or other similar devices." N.J. STAT. ANN. § 59:4-5. The New Jersey Supreme Court has held that traffic signal immunity provided by N.J. STAT. ANN. § 59:4-5 is a subset of discretionary activity immunity provided by N.J. STAT. ANN. § 59:2-3(a). *Kolitch v. Lindedahl*, 100 N.J. 485, 496 (1985) ("[T]he determination as to the advisability or necessity of a traffic sign or warning device at any particular place requires the exercise of discretion, and hence N.J.S.A. 59:4-5 simply specifies one particular type of discretionary activity to which immunity attaches.") (citing *Aebi v. Monmouth County Highway Dep't*, 148 N.J. Super. 430, 433 (Super. Ct. App. Div. 1977)). This traffic signal immunity is absolute. *Eason v. New Jersey Auto. Full Ins. Underwriting Ass'n*, 274 N.J. Super. 364, 372 (Super. Ct. App. Div. 1994) ("There is no question that the governmental unit has *absolute*

*immunity* . . . for its decision whether to place [a traffic control] device . . . .") (emphasis added), *remanded on other grounds*, 139 N.J. 182 (1994).

In *Aebi*, the plaintiff alleged that a public entity was liable for the injuries and fatality arising out of a motor vehicle accident on the theory that the public entity failed to post a sign or other device warning motorists that the width of the roadway was being suddenly reduced to the width of an upcoming bridge. The Court held that the public entity enjoyed immunity from liability under N.J. STAT. ANN. § 59:4-5 for failing to provide ordinary traffic signs. *Id.* at 433-34.

Similarly, in *Weiser v. County of Ocean*, 326 N.J. Super. 194 (Super. Ct. App. Div. 1999), the plaintiff sued defendants New Jersey and Ocean County, alleging that the decedent's fatal motor vehicle accident was caused, in part, by defendants' failure to paint markings on the roadway warning motorists of an upcoming sharp turn. The Court held that "[i]f the County's culpability [for decedent's death] is its failure to paint markings, it is immunized from liability [for failing to provide ordinary traffic markings] by N.J.S.A. 59:4-5." *Id.* at 202.

In the instant action, Defendants' failure to post speed limit and curve warning signs at the location of Decedent's accident is a "failure to provide ordinary traffic signals" under N.J. STAT. ANN. § 59:4-5. Insofar as Plaintiff claims that Decedent's death was caused by Defendants' failure to post speed limit and curve warning signs, Defendants are immune from liability.

### ii. New Jersey Statute § 59:2-3(b)

Under New Jersey law, a public entity is "immune from any suit based on either enactment of [a] speed-limit statute or [a] speed-limit regulation." *Kolitch v. Lindedahl*, 100 N.J. 485, 509 (1985) (interpreting N.J. STAT. ANN. § 59:2-3(b), which provides that "[a] public entity

is not liable for legislative . . . action or inaction, or administrative action or inaction of a legislative . . . nature"). This speed-limit statute immunity is absolute. *New Jersey Dep't. of Envtl. Prot. v. Middlesex County Bd. of Chosen Freeholders*, 206 N.J. Super. 414, 426 (Super. Ct. Ch. Div. 1985) (The "New Jersey Tort Claims Act provides absolute immunity for 'administrative action or inaction of a legislative' nature.") (citing N.J. STAT. ANN. § 59:2-3(b)).

In the instant action, Defendants' enactment of N.J. STAT. ANN. § 39:4-98, which sets the speed limit at fifty miles per hour at the location of Decedent's accident, is immunized from liability under *Kolitch* and N.J. STAT. ANN. § 59:2-3(b). Insofar as Plaintiff claims that Decedent's death was caused by Defendants' failure to set the speed limit at forty miles per hour at the location of Decedent's accident, Defendants are immune from liability.

### iii. New Jersey Statute § 59:4-4

Under New Jersey law:

> a public entity shall be liable for injury proximately caused by its failure to provide emergency signals, signs, markings or other devices if such devices were necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.

N.J. STAT. ANN. § 59:4-4.

In *Smith v. New Jersey*, 247 N.J. Super. 62 (Super. Ct. App. Div. 1991), the plaintiffs sued a public entity arguing that a low underpass created a dangerous trap for motorists and thus a public entity was required to provide emergency warnings as contemplated by N.J. STAT. ANN. § 59:4-4. *Id.* at 69. The Court disagreed and held that an emergency sign was not required because the low overpass was an ordinary, continuing and longstanding traffic condition. *Id.* at 71. The Court explained that an emergency sign is only required if the condition is sudden,

unexpected, or extraordinary. *Id.* (citing *Rochinsky v. New Jersey*, 110 N.J. 399, 415-16 (Super. App. Div. 1991)). The Court concluded that as the low underpass was not a condition that required an emergency sign, the public entity was not liable under N.J. STAT. ANN. § 59:4-4. *Id.* at 71-72.

Similarly, in *Weiss v. New Jersey Transit*, 128 N.J. 376 (1992), the plaintiff sued a public entity arguing that a railroad crossing created a dangerous condition for motorists and thus a public entity was required to provide emergency signs as contemplated by N.J. STAT. ANN. § 59:4-4. *Id.* at 379. The Court disagreed and held that an emergency sign was not required because the condition at the railroad crossing was "not sudden, unexpected, or emergent." *Id.* at 384.

In the instant action, Plaintiff argues that the condition of the Route 4 Westbound ramp required an emergency sign pursuant to N.J. STAT. ANN. § 59:4-4. However, as Plaintiff provided, between April 6, 2000 and December 2, 2004, the date of Decedent's accident, ten other vehicular accidents occurred on the Route 4 Westbound ramp. (*See* Pl. Stmt. ¶¶ 18-27.) Further, as provided by Plaintiff, the maintenance resurfacing project occurred on Route 4 in 1999. (*Id.* ¶ 32.) Thus, the condition of the Route 4 Westbound ramp at the time of Decedent's accident was longstanding and not sudden, unexpected, or emergent, and did not require an emergency sign as contemplated by N.J. STAT. ANN. § 59:4-4.[4]

### iv. New Jersey Statute § 59:4-2

Under New Jersey law, a public entity is liable for an injury caused by a condition of public property if the plaintiff establishes:

---

[4] This Court is bound by New Jersey state precedent, and if the "death trap" vertical sag curve in *Kolitch* did not necessitate the placement of emergency signs as contemplated under N.J. STAT. ANN. § 59:4-4, then we are constrained to find that no emergency sign was required in the instant action.

10

> (1) that a dangerous condition existed on the public entity's property; (2) that "the injury was proximately caused by the dangerous condition;" (3) "that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred;" (4) the dangerous condition was created by a "negligent or wrongful act or omission of an employee of the public entity within the scope of his employment;" and (5) the conduct of the public entity, in attempting to protected against the condition or in failing to do so, was "palpably unreasonable."

*Ryan v. Princeton Borough*, No. A-0409-03T2, 2005 WL 1875263 at *2 (N.J. Super. App. Div. July 11, 2005) (citing N.J. STAT. ANN. § 59:4-2). However, N.J. STAT. ANN. § 59:4-2 "is only pertinent if there is an area that isn't already given immunity by other sections." *Smith*, 247 N.J. Super. at 66. For example, in *Smith*, because N.J. STAT. ANN. § 59:4-5 provided immunity to the public entity for a failure to post ordinary traffic signals, the Court determined liability could not be imposed on the public entity pursuant to N.J. STAT. ANN. § 59:4-2. *Id.* at 66.

In the instant action, Plaintiff argues that the failure to post speed limit and curve warning signs and the failure to set the speed limit at forty miles per hour should be analyzed under N.J. STAT. ANN. § 59:4-2. However, because Defendants have immunity from liability from these failures under N.J. STAT. ANN. §§ 59:2-3(b) and 59:4-5 as discussed above, liability cannot be imposed on Defendants under N.J. STAT. ANN. § 59:4-2—regardless of whether a dangerous condition existed on the Route 4 Westbound ramp at the time of Decedent's accident.

### v. Defendants' Failure to do More to Maintain the Roadway

Plaintiff argues to no avail that "this case is more than just simply about the discretionary decision whether to place a speed sign or not," (Pl. Mem. Opp. Summ. J. 26.), and that the "real issue is whether the State created a dangerous condition on its roadway in 2000 and failed to maintain this roadway thereafter causing the accident on December 2, 2004 that killed Mr. Rodriguez." (*Id.* at 20.) The vague allegations that Defendants are potentially liable for not

doing more cannot defeat summary judgment because Plaintiff does not provide any factual evidence indicating what additional specific steps Defendants should have taken. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 171 (3d Cir. 2008) ("The party opposing summary judgment may not rest upon the mere allegations or denials of the pleading; its response, by affidavits or as otherwise provided in this title, must set forth specific facts that there is a genuine issue for trial.") (citing *Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001)). The burden is on Plaintiff to set forth specific facts and to be clear about the Defendants' specific actions or inactions that caused Decedent's accident. *See* N.J. STAT. ANN. § 59:4-2(a).

## IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is granted, and the Complaint is dismissed with prejudice. An Order follows.

**S/SUSAN D. WIGENTON, U.S.D.J.**

cc: Madeline Cox Arleo, U.S.M.J.